Reese, J.
delivered the opinion of the court.
The bill is filed to have a discovery of certain equitable real estate of Thomas Eastland, and satisfaction out of the same, of a judgment obtained by the complainant, against East-land, as the bill alleges, in the county court of Davidson, in the year 1832, for $3433 25, <£it being for money recovered by Joel Oxley against said Eastland, and a certain William M’Laurin and the complainant, as his securities, in the year 1824.” The bill charges that complainant caused an execution to issue upon this judgment, that certain chattels of defendant Eastland were levied on and sold, and the sheriff returned ‘‘nulla'bona ultra.’1'1 The bill then describes certain real estate, of which the legal title is alleged to be in defendant John W. Simpson, but the equitable title in defendant Eastland, and a sale of the equitable property is prayed for.
The defendant Eastland answers, that in 1818, he became together with one Stump, appearance bail for one Bakewell, *313 m an action brought against the latter by Joel Oxley, that subsequently, lor the non-appearance of their principal, a scire das was sued out against the bail. Defendant supposed that he had discharged himself by the surrender of Bakewell, but judgment having been rendered against him, he without said Stump joining therein, prayed an appeal, and gave as his sureties therefor, the complainant and the said M’Laurin, and that Oxley in the supreme court obtained judgment against the defendant and his sureties, complainant and M’Laurin. That afterwards the complainant filed a bill and obtained an injunction, which upon a compromise between Oxley and complainant was made perpetual, except as to the sum of one thousand dollars and costs, amounting to $250, and these amounts constitute all which the complainant has been compelled to pay as his surety. That defendant is not liable to refund to him that amount, because when he became surety for defendant, there were balances due from him to defendant, on the ground of a pre-existiting mercantile copartnership, which by agreement at the time of his becoming surety, were to remain in his hands as an indemnity against said suretyship. The answer also insists that the judgment set out in the bill, and upon which the execution had been issued was void, because taken without process or notice, and without the payment by complainant, of the money recovered in said judgment.
All the statements and allegations in this answer contained, were subsequently set forth in a cross bill filed by defendant, Eastland, against complainant, M’Nairy. To this cross bill, M’Nairy answered that the sum of $1000 for debt, and $250 for costs, in the ease of Oxley vs. ‘ Eastland, M’Laurin and himselfand in his case vs. Oxley in chancery, was the whole amount which as Eastland’s surety he had been compelled to pay — that it is all which he claims from Eastland, with interest upon it, and that the judgment for more was taken by his counsel, he supposes by mistake. He denies the allegation that he was indebted to Eastland for balances due on the ground of their mercantile co-partnership, and he denies the alleged agreement that such indebtedness on his part was to continue with a view to his indemnity; and he denies that he has been in any way indemnified, and pleads the statute of limitations *314 as to the account sought to be had in regard to said mercantile transactions, which had been closed by settlement.
The first question which claims our consideration is, whether the judgment of the county court of Davidson for the sum of $3438 25, mentioned in the bill and set out in- the proofs, be void or only voidable; and we think the judgment void. It is not authorised by the act of 1801, because it does not pur-, port to have been rendered on the ground that the surety liad paid the money, upon which ground alone that act gives the motion to the surety. It cannot be maintained by the proviso ions of the act of 1809. That act indeed gives to a surety against whom a judgment may have been maintained, the summary remedy of a motion over against his principal without a previous payment of the money, and upon the mere ground of the rendition of the judgment against him. The remedy furnished by this statute is, perhaps, peculiar to Tennessee; it is without notice, summary and contrary to the course of the common law, and of that character therefore, with reference to which this court has so often declared that it must pursue the provisions of the statute; that the proceeding upon itsjface must show that the case comes within the statutory requirement, or-thatthe court will be without jurisdiction. This judgment was rendered in favor of one surety, when it is shown upon the face of the proceeding that there was another, namely, M’Laurin, who was surety also, and against whom likewise the original judgment had-been rendered. To permit the creditor to obtain his judgment against the principal debtor, and against a numerous train of sureties, and then to suffer this numerous, train of sureties, without any payment of tire money, to recover over against the principal-debtor, each one.for himself a separate judgment for the whole amount of the judgment so-rendered-, would produce an oppression and harrassment of the principal debtor, the most startling and monstrous. Such, however, is the principle of the course attempted in this case, under the act of 1809, a principle which“cannot receive our sanction. This being our opinion, and-this court having heretofore determined that a court of chancery has jurisdiction to vacate and enjoin a void judgment, it would be our duty, if this wore all that belonged to the case, not only to dismiss the *315 bill of the complainant, but to give the relief by Eastland prayed for in his cross bill, and to set aside, vacate and en•join all proceedings upon the judgment of the Davidson counly court m the pleadings mentioned.
But we are of opinion that in giving to Eastland, upon his cross bill, the relief by him prayed for, as against said judgment, we cannot ovejook the fact that the pleadings upon the cross bill and the proof applicable tb it¿ establish that M’Nai-ry as the security of Eastland, has béen Compelled to pay $1250, and that he has received no indemnity as was insisted. And is he not intitled therefore, here to a decree for that amount? Why should h’e not receive at our hands such a decree? Cán there be any doubt of the jurisdiction of the court as to the case made in the cross bill? and will the fact of its being across bill make any difference? Will not the same consequences follow as regards the question of jurisdiction, as if an injunction bill on the part of Eastland without any original bill on the part of M’Nairy had. been filed, and the same pleadings and proof as in this case fiad followed th'éreon? Would this coürt in such case, vacate as béing void, the judgment in behalf of M’Nairy, and yet refuse to decree to hirh as surety against his principal, the $1250, tb which the admissions of the bill, the allegations in the answer, and the testimony of witnesses so fully entitle him? We think it very clear that to such a decree at all events, M’Nairy has a right.
But it is urged by his counsel, that he is entitled to a sale of the equitable real estate as prayed for, because conceding that the judgment on motion is void, still, as M’Nairy, in the character of surety, was compelled to pay to the creditor, Oxley, lipón his judgment against Eaátland and his sureties, the sum of $1250, he has a right in equity to be substituted for Oxley, and to have the use and benefit of his judgment against East-land, and all the means of satisfaction depending upon said judgment and consequent upon such substitution. The counsél of Eastland not calling in question the general i ight which h surety has, upon payment of the debt, to be substituted to the creditor’s rights, and to have the benefit of his judgment, as against his principal, yet deny that in this case upon such ground the complainant can entitle himself to the relief prayed for in the bill.
*316 ist. Because it is said that the bill is not framed with a , , . . _ . . , to such a substitution, and no such purpose was m the m¡n(j 0f the draftsman. This is obviously so. But still, all tjje facts up0n which such right of substitution would arise are distinctly stated in the pleadings, and when that is done, it matters not, in the view of a court of chancery, that such statement of facts may have been made with the purpose and belief, that the wished for relief might flow from a totally different source of equitable jurisdiction.
2d. It is said that in order to give M’Nairy the benefit of such substitution, it is necessary that Oxley, the judgment creditor, should have been mado a party. Situated as is the present case, Oxley is not a necessary party. ' M’Nairy, the surety, filed his bill and obtained an injunction against the original judgment, and that judgment, except the sum of $1000, was perpetually enjoined, and the proof from the sheriff and the record are very satisfactory that Oxley has been paid. Why make him a party? To contest the mere question of payment so satisfactorily proved, and not contested’, even by Eastland himself? He has received his money; the decree can in no way affect him — as to him the whole matter is res inter alios.
3d. But it is said, that if the frame of the bill and the statement of facts be such as to allow of this substitution, and the creditor Oxley be not a necessary party, still the substitution will avail nothing in giving the relief in the bill prayed, because Oxley himself having been only a judgment creditor of Eastland, and having never issued an execution or procured a return of nulla bona, would not himself have been entitled to the relief sought, and of course M’Nairy will be entitled to nothing more. This raises the Important question, whether a judgment creditor can, on the ground of the lien of his judgment upon the lands of his debtor, go into a court of chancery to seek satisfaction out of the equitable real estate, without having issued his execution or procured a return thereon of nulla bona? It is frequently said, that in these cases, a court of chancery lends its aid to a court of law, exerts a jurisdiction which is merely of an ancillary character, and that therefore the party plaintiff who invokes this aid, must show to the *317 court with a view to its jurisdiction, that he has exhausted his J . . . legal remedies. Generalities of this sort, which with ° . . ence to so many cases, are founded in truth, sometimes come to be taken by frequent repetition as axioms, behind which, as a bulwark, we seldom in any case look. As a question affecting merely the jurisdiction of a court of chancery, it is believed that the principle traced to its origin will be found to be this, that a creditor who goes into a court of chancery to obtain satisfaction of a merely legal demand, must show that he has proceeded to such extent at law as to give him title to proceed in equity; that, in the earlier cases seems to have been, that if satisfaction was sought to be obtained out of equitable title in personal assets, not only a judgment but an execution issued, and put in the hands of the sheriff in the county where the equitable assets were situated, Were held to be necessary. The actual issuance of the execution and its reception by the sheriff in the proper county, were necessary to give alien, and the lien authorised the parly having it to go into chancery. So if the creditor sought to obtain satisfaction of his legal demand out of equitable real estate, he must obtain a judgment at law, for in such case it is the judgment, and not the issuance of an execution which confers a lien on real estate, and having such judgment and lien,- the creditor might pursue the equitable real estate in chancery.
In the first case on this subject, 1686, Angel vs. Draper^ personal property was sought by the judgment creditor. A demurrer to the bill was sustained, “because the plaintiff had not alleged that he had taken out execution, for until he had done so, the goods were not bound by the judgment,- nor the plaintiff entitled to a discovery on account thereof.” 1 Vern. 206. So also in the case of Shirley vs. Walts, 3 Atk. 200. A judgment creditor who had not taken out execution, brought a bill against the defendant to redeem him who was a mortgagee of the leasehold estate, and likewise a bond creditor, and the Master of the Rolls decreed that the bill must be dismissed, “because till execution, the plaintiff has no lien on the leasehold estate.
It is obvious that both these cases show that a lien on the equitable property sought, in satisfaction, is necessary to enable *318 a plaintiff to pursue it in a court of chancery, and that a iudg-1 1 ...... J does not create this hen upon personal chattels or leasehold interest in land, which is personal estate; but if it had been a freehold interest; the lien of the judgment would have been sufficient. This is asserted by Mr. Coventry, the learn-ed_ annotater of the Treatise of Powell on Mortgages, who in a note 282, remarks that there “aré some few passages in the works of learned writers, which have a tendancy to cori-fuse the student.” Among these he. enumerates the following: “Many books use this language, a judgment creditor may redeem, having previously sued out a writ of execution. See Fon. Tr. on Eq. 269, and 1 Mad. Ch. 522, (2d Ed.) Now, with respect to a mortgage in lee and a mortgage for years of freehold property, no writ of execution is necessary to entitle the creditor to redeem; it is to the redemption of a leashold estate only, that a writ of fieri facias is essential. In the case of Brinkerhoff vs. Brown, 4 John. Ch. Rep. 677, which was a case with regard to persoal property chiefly, Chancellor Kent says, “I find the rule to have been long and uniformly established, that to procure relief in equity by a bill brought to assist the execution of a judgment at law, the creditor must show that he has proceeded at law to the extent necessary to give him a complete title.” “If he seeks aid, adds Chancellor Kent, as to real estate, he must show a judgment creating a lien upon such estate; if he seeks aid in respect to personal estate, he must show an execution giving him a legal preference or lien upon the chattels.” He then refers to the cases of Angel vs. Draper, and Shirley vs. Watts, before remarked on, and seems to think although the issuance of an execution with regard to personalty, constitutes in the opinion of some judges-, without more, the requisite lien, yet the good sense of the thing would be, to require a return of the execution, showing what had been done under it.” In the .case before him, no execution having been issued and returned, the bill was dismissed. In that case, land was mentioned in the pleadings, but the chancellor with regard to that said: “It lies open for sale, according to the course of the courts of law.” It is very clear that if the land in question had been held by equitable title only, it would have been determined by the chancel *319 lor so far as related to that, that a iudgment only and not an ’ JO ■' execution was necessary.
Again, in the case of M’Dermott vs. Strong, 4 John. Ch. Rep. 692, the same able and learned judge lays down the rule on the same subject to be, “that an execution creditor at law, has a right to come here and redeem 'an incumbrance upon a chattel interest, in like manner as a judgment creditor at law is entitled to redeem an incumbrance upon the real estate, and that the party so redeeming will be entitled in either case to a preference according to his legal priority.” The supreme court of South Carolina, in the case of Perry vs. Nixon, 1 Hill’s S. C. Rep. 335, says, “that before a creditor seeking relief touching the personal assets of his debtor, can come into this court, he must show not only a judgment and execution, but that he has pursued his execution at law to every available extent,”, and then the court quote and approve the rule laid down by chancellor Kent in the case of Brinkerhoff vs. Brown, 4 John. Ch. Rep. 677, already quoted by us.
We take the law to be, therefore* that a judgment creditor, when seeking- satisfaction upon the ground of his lien, out of equitable real estate, need not in order to confer upon the court of chancery jurisdiction; issue an execution at law or procure a return of nulla bona', and indeed, upon principle we would ask, why issue and return an execution ? It is not necessary, as we have seen, in order to create the lien — that is done, not by the execution but by the judgment. Is it to show that the legal remedy has been exhausted ? The return of nulla bona or “no goods,” would not have that effect, for there may have been legal estate in lands — and however frequently in bills of this description, it may have been avered, that there was no land remaining subject to execution at law,, we apprehend that no one has decided or perhaps contended that the return of such fact upon an execution, or the averment of it in a bill, is necessary to the maintenance of the jurisdiction of the court. It can hardly be supposed, indeed, that in any case a plaintiff who could at law by the mere force of an execution, obtain a satisfaction of his judgment out of personal assets or legal estate in lands, would choose to. incur the certain expense, trouble and delay of seeking in a *320 court of chancery after equitable assets or real estate. If it „ , , m any case that the jurisdiction ot the court was thus capriciously resorted to, we would not say, that chancery would not stay its hand and direct the plaintiff to seek his satisfaction by execution at law. In the case before us, it is admitted by the answers both of Simpson and Eastland, that the latter defendant has no other property than the equitable real estate in the pleadings mentioned.
The result of our opinion therefore is, that the judgment of the county court of Davidson, of 1832, in favor of complainant against defendant Eastland, in the pleadings mentioned, is void, and that the same be vacated; that, however, the court has jurisdiction upon the issue and proof in the cross bill to decree the $1250, in the pleadings mentioned to be paid by Eastland to M’Nairy, and lastly, notwithstanding the frame of the bill and the omission to make Oxley a party, that complain-plainant is entitled to be substituted to the right of the judgment creditor, Oxley, to the extent of the amount of said judgment paid to Oxley by M’Nairy, and that the effect of such substitution is, upon the lien of said judgment, to enable the complainant to maintain this bill to subjeet the equitable real estate mentioned, to the satisfaction of Oxley’s judgment.
Decree reversed.